Case number 213970. Brendan Schoonover versus K Rogers et al. Oral argument not to exceed 15 minutes per side. Mr. O'Hara, you may proceed for the appellant. Good morning, your honors. May it please the court, my name is Michael O'Hara, excuse me, I represent Brandon Schoonover, the plaintiff in this case, and I'd like to begin by focusing on the subjective awareness component of the deliberate indifference test and the district court's misapplication of that standard by failing to consider the totality of the factual record and the combination of the conditions of confinement that Mr. Schoonover was subjected to that inevitably led to his beating on May 18, 2016. We begin with the unequivocal command in Farmer v. Brennan that this court's aware of, quote, prison officials must take reasonable measures to guarantee the safety of inmates. We read that command in the context of its earlier decision in Wilson v. Cedar, where the court said some conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, when they have the mutually enforcing effect that produces the deprivation. Those two principles were not properly applied by the district court in this case when the court, and we see that actually on page ID 211 of the court's decision, we can see where the court held, and I'll quote from that decision, even granting Correll knew, one, that Schoonover was a sex offender, two, that sex offenders generally face increased risk of attack when incarcerated compared with other inmates, three, that Schoonover's temporary cellmate, Clinton Waters, the attacker in this case, had recent violent incidents involving sex offenders. The court still held that combination fails to create a genuine dispute of material fact as to whether Correll, Deputy Correll, had subjective knowledge when he moved Schoonover from M4 to M8. And the error committed by the district court is further evidenced in what fact he selected. He focused on, not just focused on a fact, but the absence of a fact. Again, at page ID 2111, the court says the court fails to see any evidence showing that Correll learned about Sturgill's phone call and the fallout. And the court probably remembers from the record, Sturgill is the inmate that made the call that confirmed that Schoonover, after he'd been moved into M8, was a sex offender. Conveyed that to Waters. Waters then proceeded over the next, according to inmate Young's testimony, six to eight hours. Abusing, physically abusing our client. Do you dispute that Correll would not have known about Sturgill's phone call? I don't dispute that fact. But the combination of facts that Correll did know, which was Schoonover was a sex offender, that sex offenders were particularly vulnerable at that facility. Rogers testified, Sheriff Rogers himself testified to that. Deputy Arnold said 50% of fights at that facility involved sex offenders. All of that would have been within his realm of knowledge. Plus, he knew that Waters, four days, four days before this incident, Waters abused another, physically attacked. So you're focusing, and don't let me get too far, you're saying that Correll was deliberately indifferent once he moved your client into the M8, eight man cell, regardless of the other reasons. Regardless of whether number four was needed for the female prisoners and so forth. Right. He was deliberately indifferent by not This is really no different, actually this is no different than what the Supreme Court in Farmer v. Brennan held. That was an inmate who the court found was vulnerable and was put in, this was, Farmer, you'll remember, involved a transsexual inmate that was at a federal prison facility and then eventually moved to another federal prison facility. At the former facility, the inmate was in any protective situation. The inmate didn't complain about that. Nevertheless, Farmer, the Supreme Court held that that was sufficient to put the officials at issue, the defendant officials in that case, on notice that there was a substantial risk of serious harm. Well, didn't Waters, though, attack all kinds of prisoners? His record indicated that he had attacked people who were sex offenders, but he also had attacked other folks who were in for offenses that didn't have anything to do with sexual offense. Correct, Judge Davis. So that helps us. That confirms that he is a violent inmate. So no one should have been in the cell with him? Is that your position? Well, I mean, if it were up to me, I'm not concerned about who was in the cell other than Brendan Schoonover. And Brendan Schoonover is, in fact, known to Coral and Sheriff Rogers. And should he have been, given his history, should he have been in, say, a max facility or a max cell? Yes. That's what most jails do. This jail couldn't do that. They didn't have one. Because they didn't have one, because they had overcrowding. They had persistent overcrowding, which is documented in two Ohio Department of Justice beatings. Let me ask you whether I've missed a fact here. Was it not the case that Waters and Schoonover were in the same cell for four or five days? The difference, allegedly, was that because of Sturgill, Waters found out he was a sex offender. But if Coral didn't know that, then how can he be held liable for that difference? And shouldn't we look at the fact that Waters didn't attack him for five days? Why should Schoonover have been concerned, or at least not deliberately indifferent? I mean, the reality is Coral's got lots of problems. The jail's got lots of problems. Deliberate indifference doesn't mean I didn't do the very best possible situation given what I had. No. It would mean only do what he did with another inmate. So in our brief, we show that at virtually the same time, about 9.30 a.m., he moved inmate Jones into N4, which everyone testified was alternatively used as a segregation kind of area for sex offenders because of the particular problem with sex offenders being attacked at that jail. So that alternative was available to him, Judge Boggs, and it was not used at the time he decided to move him, for whatever reason, with Waters. And what's the connection that makes that deliberately indifferent as opposed to anything that Coral had, anything against Jones, I mean, against Schoonover? The fact that he thought that somebody else needed to be moved and Schoonover didn't? What gets you over the deliberate indifference? Deliberately indifferent because he knows of the particular vulnerability of sex offenders, and he knows of the predatory nature of Waters. And the fact that he got away with four days, and let me address that if I could. But he doesn't know that Waters is predatory towards sex offenders. Yes, he does, Your Honor. There is a history, and it's noted in our brief, of Waters, four days before this, beat another sex offender. That inmate's name was Sap. Immediately prior to that beating of Waters against Mr. Sap, Mr. Sap, Coral came to the cell, ran out, and said, move me to another cell. My life's in danger. And Coral denied that, put him back in the cell, and almost immediately thereafter, Sap then beat him specifically because he was a sex offender. In a report that was done by Arnold, Deputy Arnold, in that case, she also noted at the same time another inmate came up to Coral and said, I'm sorry, came up to Deputy Arnold and said, move me. I'm a sex offender. I'm going to get jumped as well. And I think they ended up moving them. But to get back to Judge Boggs' point, if I can for a minute, Judge Larson, this is no different than Taylor v. Michigan Department of Corrections. That involved a youthful inmate who was there for a while before he was beaten. Green v. the Green case that we cite in our brief involved a transsexual, again, much like Farmer, that was there for some period of time before they were beaten. It doesn't matter that there's some period of time that elapses. What matters is what they know and do they understand it subjectively to be a substantial risk. And all the evidence in this case confirms that they understood the substantial risk to scoon over. And so what was their response? That's what Farmer teaches us. What was the response? Well, in Farmer, there was a two-week delay before there was a. So to answer Judge Boggs' question, could the jail officials in that case assume that there was no danger to the transsexual that was put in general population because two weeks had elapsed or a week had elapsed? So we'll just leave that person there. So the timing. With respect to your Jones point, I'm looking at your brief. Am I right, even from your brief, that there's no explicit indication that Jones was moved because he was a sex offender, that middle four and end four can be used for sex offenders but not exclusively? That's correct. Is that a correct interpretation? We don't know why. Quarrel pleads no memory of this event. I suppose if he had not been moved, then there would have been 14 people in the cell rather than 13. That's correct. In middle eight, so. That's correct. He reallocated prisoners for probably good reason if end four was available to take some of the pressure off. But you're right, that's speculation. Let me ask you, so following on that a little bit, you've indicated that there's evidence that Quarrel knew that Schoonover was a sex offender. Is there also evidence that Quarrel knew whether or not Waters was aware of his sex offender status? As I understand it, Schoonover, the sentence that he was serving was not for the sex offense. He was in there for something that wasn't a sex offense. No. So does that matter? It does not matter, Your Honor. What matters is they know that sex offenders are at a particular risk. That's why they had this ad hoc off and on practice, assuming no overcrowding, where they tried to confine sex offenders in M4 or N4. And that was the reason for that. But if Waters doesn't know that he's a sex offender, then doesn't that impact whether or not Quarrel had a subjective awareness of the risk? He knows of the subjective awareness of the risk, Your Honor, because he knows that Schoonover is vulnerable. There's nothing in Brennan, and I urge the Court to look back at this decision in Green v. Bowles where it specifically said knowledge of who's going to be the attacker is not relevant in the Farmer v. Brennan calculus. What is important to know is are you aware of a substantial risk? And as we know, everyone at that jail knew that sex offenders were at a substantial risk. Then you look to what the response was. And because of overcrowding, the response was to pretty much ignore the risk. And certainly, if anything, they made the situation worse by moving him in with someone they did know, Judge Davis, they did know was a predator. And those are the kinds of concerns in Green, in this Court's decision in Taylor v. Mission, Department of Corrections, and in the seminal case of Farmer v. Brennan that prompted the courts in those cases to deny summary judgment to the prison officials. I haven't gotten to the liability of the county itself, and I see my time's up. You can probably handle that on rebuttal unless my colleagues feel otherwise. All right. Thank you, Your Honor. Good morning. May it please the Court. I'm Angelica Jarmus on behalf of the appellees, Adams County Sheriff Kimi R. Rogers and Deputy Kenny Correll. Your Honors, the district court's grant of summary judgment should be affirmed because Mr. Schoonover does not meet the stringent standard of fault for an Eighth Amendment claim on this record. What we heard argued and what we previously read in Mr. Schoonover's briefing describes at most negligence in the monitoring of jail conditions. But there's no showing of the requisite degree of culpability by either of the individuals or the county that would be needed to deny summary judgment. There's not evidence of that deliberateness tantamount to intent to punish or subjective intent akin to criminal recklessness. And that's primarily for two reasons, the first being that Mr. Schoonover cannot rely on what he believes Deputy Correll and or Sheriff Rogers should have known. Instead, Mr. Schoonover has to cite to specific parts of the record showing what each individual did in fact personally know and what they inferred from that and then subsequently disregarded. And I would note that it doesn't seem as if Mr. Schoonover disputes that that's the proper legal standard to apply here. As for the county, the second reason in which summary judgment should be affirmed, the county's practice of utilizing best efforts to house sex offenders in the middle four or end four cell was not the moving force behind any constitutional violation. But more importantly, there is no underlying constitutional violation here. And for that, we go back to examining the individual appellees and how neither Deputy Correll nor Sheriff Rogers had any indication that Mr. Schoonover was facing a substantial risk of serious harm on May 18, 2016. Mr. Schoonover is clinging to an impermissible chain of inferences and like the appellant in the Miller v. Calhoun County case, he is essentially inviting this court to engage in speculation to overcome the lack of evidence that the individuals were aware of Mr. Schoonover's true condition inside that middle eight cell and then deliberately chose to ignore the apparent risk. It's not enough for Mr. Schoonover to raise a question over what Deputy Correll should have known, whether it's a question that Deputy Correll should have known moving Mr. Schoonover to middle eight or letting him remain there for the rest of Deputy Correll's shift presented this substantial risk of serious harm. And it basically boils down to you can't be deliberately indifferent to something that you weren't aware of. And I know it was noted that the change in Mr. Schoonover's circumstances was largely that phone call Mr. Sturgill made and that there's no point in the record indicating Deputy Correll had any knowledge of that phone call, what it entailed, or that anybody learned of Mr. Schoonover's sex offense. And the idea that one cannot be deliberately indifferent to something that they're not aware of was emphasized in the Norrieverse County of Oakland case, especially during that oral argument. The proper analysis or the focus should be on the information that individual had at the time. As for municipal liability against the county, I would like to actually step back a second and also note that there's not any evidence in this record that Deputy Correll was aware that Mr. Waters ever targeted sex offenders. And I would dispute the representation of the Sap assault. There is no indication that Deputy Correll had any knowledge of Mr. Waters' motivation behind that assault. It is true that when Deputy Correll approached the cell, Mr. Sap indicated that he wanted to be let out, but he gave no reason as to why he wanted to be moved. He didn't say anything with particular regard to Mr. Waters or his sex offense. And Mr. Waters even testified that, to Deputy Correll's credit, oftentimes inmates want to be moved to get in with their friends or to get a better bunk situation, what have you. It wasn't until Correction Officer Arnold came on duty that it came out that Mr. Sap actually was even assaulted, that violence had occurred, and his belief that it was due to his sex offense. Mr. Schoonover tries to rest on his own alleged mistreatment inside the facility in order to create municipal liability, which this Court has said is not enough. And the first factor that needs to be met for establishing municipal liability is this clear and consistent pattern of similar mishandlings, which is not on this record. So unless there are particular questions that Your Honors have, I would respectfully ask that this Court affirm the grant of summary judgment. Thank you, Counsel. We'll hear rebuttal. Again, I think it's important for this Court to look back at its decision in Green v. Bowles where the Court made this finding. Awareness can be demonstrated through inference from circumstantial evidence, and a prison official cannot escape liability by showing that while he was aware of an obvious substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault. So what Corll knew at the time about what inmates in M-8 may have known or learned about Mr. Schoonover's status is not relevant given that decision in Green. What is relevant is he was aware, Corll was aware, of an obvious risk to sex offenders. That's undisputed. I didn't hear my friend dispute that point. So your argument is basically if you're a sex offender at this prison at this time, you have to be segregated from the gen pop? No. You have to be segregated from predatory inmates. And he did know, at the very least, although in Brennan... Don't they have to be predatory towards sex offenders? They have to be predatory, and in this case, by the way, in this case the evidence, Mr. Waters testified that he announced to the guards that he didn't want to be housed, all guards. So it was... Sorry, that he announced to the guards that what? That he did not want to be housed with sex offenders, and he told them, he said he was involved in multiple fights, and he told them the reason for the fights was they were sex offenders. Now, the other point that I think that was made fairly by... He announced that to whom? To the guards. He said, I told all the guards that. That's his testimony. Including Corll? He did not specifically identify guards by name. He just said they all knew. I told everyone they knew, and he said I was shocked that they put him in a general population cell. But the important thing under Green, and more importantly under Farmer, is that he is aware of the substantial risk at Adams County Jail. Adams County, other facilities may not have the same problem, but Adams County, 50% of fights involve sex offenders. Would it be fair, I'm looking at your gray brief, page 9, footnote 8, to say that what you say there is the crux of your case, that he has an Eighth Amendment right not to be housed with a known assaulter of vulnerable inmates. That's correct. Kind of the bare minimum guts of your argument. That is, Judge Boggs, that is the bare minimum guts, and that is consistent with Farmer v. Brennan, which was a vulnerability inmate beating case, and this Court's decision in Green v. Bohl, as well as this Court's decision on county liability, just very briefly, the acts of the county in ignoring persistent overcrowding that's reflected in the DRC reports, their failure to implement any classification system, and the acts of Rogers admitting that he knows about the vulnerability of these inmates and doing nothing to implement a classification system all imputes to the liability of the county. They were the moving force. The overcrowding considered together with the failure to implement any classification system ultimately led inevitably to this meeting. Thank you, Counsel. Thank you, Your Honor. Thank you for your arguments today. I think you're the only two counsels left in the room, but thanks to everyone this morning, and the Court may adjourn the Court.